**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Heller,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-17-00243-TUC-DTF<br><br>**ORDER** |

Plaintiff Jane D. Heller ("Heller") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. 1.) Before the Court are Heller's opening brief, the Commissioner's answering brief, and Heller's reply brief. (Docs. 14, 19, 20.) The parties consented to a decision being rendered by the undersigned United States Magistrate Judge. (Doc. 11.) As explained below, the decision of the ALJ will be affirmed.

## BACKGROUND

**Procedural Background**

On February 6, 2012, Heller filed an application for Social Security Benefits under Title II and XVI alleging a disability onset date of March 1, 2011 which was later amended to February 28, 2011. On June 17, 2013, Heller's claim was denied at the initial level. On August 19, 2014, Heller's claim was denied on reconsideration. On September 1, 2015, a hearing was held before Administrative Law Judge David K. Gatto (the "ALJ"). On November 18, 2015, the ALJ issued an unfavorable decision. On December

31, 2017, Heller timely filed a request for review to the appeals council. On April 11, 2017, Heller's request for review was denied. The ALJ's unfavorable decision is the Commissioner's final decision for purposes of this Court's judicial review under 42 U.S.C. § 405(g).

**Factual Background**

Born in 1965, Heller was 50 years old at the time of the ALJ's unfavorable determination. (Administrative Record ("AR") 40-41, 58.) Heller has a master's degree and no past relevant work. (AR 40.) At step two of the sequential evaluation process the ALJ determined that Heller had the following severe impairments:

> asthma, bilateral advanced chondromalacia/degenerative joint disease of the knees, torn ligament and degenerative joint disease affecting the right foot, left shoulder tendinosis, a biceps tendon tear, impingement, bursitis and osteoarthrosis and a history of left shoulder repair surgery, right shoulder tendinosis or strain and mild bursitis.

(AR 32.) The ALJ determined that Heller's cardiac condition was not a severe impairment concluding that multiple medical records showed no significant cardiac abnormalities. (AR 33.) The ALJ also determined that Heller's laryngospasms (vocal fold contractions) were not severe because the record established that Heller sought medical care only once for this condition during the relevant time period and had obtained no significant treatment for it. (AR 34.)

At step three, the ALJ determined that Heller's impairments, whether considered singly or in combination, did not meet or medically equal an impairment as set forth in the listings of impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. (AR 36.) The ALJ determined:

> that [Heller] has the residual functional capacity to perform light work, as defined by the Dictionary of Occupational Titles and the Social Security Regulations, except she is limited to occasional stair, ramp and ladder climbing; she is barred from all rope and scaffold climbing, and crawling; she is limited to frequent balancing and occasional stooping, kneeling, and crouching; she is limited to occasional exposure to dust, fumes, gases and poor ventilation, humidity and wetness, temperature extremes, and to

> hazards such as heights and dangerous moving machinery. She is further limited to frequent overhead reaching with both arms.

(AR 36.) The ALJ concluded that Heller could perform three (3) representative unskilled occupations that existed in significant numbers in the regional and national economy – interviewer, ticket taker, and production helper. (AR 41.) As such, the ALJ determined that Heller was not disabled. (AR 42.)

**Issues Raised**

Heller raises three claims of error. First, Heller argues that the ALJ erred by ignoring substantial evidence of her cardiac condition and failing to include limitations related to her laryngospasms in his residual functional capacity ("RFC") determination. (Doc. 14 at pp. 2-3, 10-11, 14-15; Doc. 20 at pp. 2-3.) Second, Heller argues that the ALJ erred in giving "inappropriate weight" to the opinion of treating physician Dr. Prem Kittusamy, M.D. (Doc. 14 at p. 2, 11-14; Doc. 20 at pp. 3-5.) Third, Heller argues that more recent medical evidence she submitted to the Appeals Counsel should be considered by this Court. (Doc. 20 at p. 5-6.) She asks the Court to reverse the decision of the ALJ and remand the matter for an award of benefits or, alternatively, to remand for reconsideration. *Id.* at p. 7. The Commissioner argues against all of Heller's claims of error. (Doc. 19.)

**The Record**

As mentioned above, Heller's third issue for review is that new evidence that she submitted to the Appeals Counsel that was made part of the record should be considered by this Court in its review of the ALJ's decision. (Doc. 14 at p. 6; Doc. 20 at p. 5.) The Commissioner argues that the new medical evidence is not material and that Heller has not established good cause for failing to present the evidence to the ALJ earlier. (Doc. 19 at pp. 14-16.) The Commissioner also argues that even if the new evidence were considered, the new evidence does not undermine the substantial evidence supporting the ALJ's decision. *Id.* at p. 16 n. 4.

Where the Appeals Counsel has made new evidence part of the administrative

record, the reviewing court must consider the new evidence in determining whether the ALJ's decision is supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1165 (9th Cir. 2012) ("[W]hen the Appeals Counsel considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Here, the Appeals Council made the new evidence a part of the Administrative Record. (AR 2.) Accordingly, the Court has considered this evidence in reaching its decision.

**The Medical Evidence**

In 1998, Heller underwent a successful cardiac ablation. (AR 32, 549.) On November 18, 2011, Heller visited the emergency room with complaints of an irregular heart rate and rhythm. (AR 781.) Dr. Paul Pannaiya, M.D., noted that Heller's EKG was abnormal from where it was "just a few months ago" and recommended that she have a stress test, "2-D echo and some serial cardiac enzymes." (AR 781-782.)

In December 2012, Heller underwent 30 day holtor monitor testing the results of which were unremarkable. (AR 799-800.) Heller's resting EKG was recorded as stable. *Id*. A January 16, 2013, ECG unsigned by a physician, reads "abnormal T-wave." (AR 1391.) On February 15, 2013, Heller was seen by Dr. Ramanathan Muthalah, M.D., for a follow up visit for chest pain. (AR 819.) This record reflects Heller's diagnosis as "nonspecific abnormal electrocardiogram." (AR 820.) Dr. Muthalah diagnosed Heller with trace tricuspid regurgitation. *Id*. A March 10, 2013, follow-up visit note by Dr. Muthalah also reflects the diagnosis of trace tricuspid regurgitation. (AR 823.)

Treatment records from March 2013 note that the etiology of Heller's complaints of chest pain, palpitations, dysrhythmia and syncope was not clear. *Id*. In May 2014, cardiology records note that Heller complains of "sub-Xiphoid discomfort that is worsened with laying down." (AR 985.) At that time, Dr. Jonathan Li, M.D., noted that "a host of cardiac testing [was] reported as normal," and "treadmill stress and echocardiogram at SMA were unremarkable." *Id*. After examination, Dr. Li noted:

> Discussed recent testing and review of prior records to show no significant heart abnormalities. Her symptoms are not consistent with cardiac etiology. Would not pursue further cardiac testing at this time. Seek non-cardiac causes of chest discomfort.

(AR 986.)

A March 25, 2014 medical record notes Heller's diagnosis of trace tricuspid regurgitation. (AR 837.) Records from Heller's visit to urgent care on December 17, 2014, reflect that she alleged a "litany of complaints" including chest pain. (AR 1056.) Heller is recorded as reporting that she is "quite active" and "has been traveling quite a bit and [that she] is under some pressure to get everything checked out today because she is leaving town in another day or two." *Id*. The medical record notes that "[t]he patient appears perfectly well." *Id*. At this visit, Dr. David Hipkin, M.D., noted that "[l]aboratory evidence shows normal EKG without sign of ectopy with short PR interval." *Id*. Chest radiographs and troponin results were negative. *Id*. Dr. Hipkin's assessment is recorded as "[c]hest pain, apparently noncardiac." (AR 1057.)

After a February 26, 2015 treadmill stress test Heller's resting EKG was "abnormal revealing non-specific ST-T wave changes." (AR 1257.) The conclusion of the treadmill stress test was noted as "normal study; mildly reduced exercise tolerance with no EKG evidence of ischemic heart disease." *Id*. On March 16, 2015, Dr. Yosef Kahn, M.D., noted Heller's successful 1998 ablation and concluded that there was no recurrence of Heller's supraventricular tachycardia. (AR 917.) On April 23, 2015, results of a stress test recorded Heller's resting EKG as abnormal showing late transition and non-specific ST-T wave changes. (AR 1260.) The record concludes "No ST changes indicating ischemia." *Id*. A June 10, 2015, medical record signed by Dr. Prem Kittusamy, M.D., reports a February 26, 2015 echocardiogram indicated "normal left ventricular size and systolic function, trace tricuspid regurgitation, trace pulmonary regurgitation and trace pericardial effusion." (AR 907-908.)

On August 26, 2015, Heller was documented as suffering from laryngospasms. (AR 1319.) This medical note reflects that Heller had "prior laryngeal Botox injections

for treatment of laryngeal spasms." *Id*. Heller testified that her laryngospasms get worse with stress. (AR 68.)

On August 27, 2015, Dr. Kittusamy completed a cardiac medical source statement. (AR 1306-1310.) In that statement, Dr. Kuttusamy identified Heller's signs and symptoms as chest pain, syncope, dizziness, and palpitations. (AR 1306.) He left unanswered questions related to Heller's prognosis and failed to identify clinical findings, laboratory and test results that establish Heller's impairments. *Id*. He reported that angina episodes occur "up to 3-4 times a day" and that Heller must typically rest 20 to 30 minutes after an angina episode. *Id*. Dr. Kuttusamy opined that Heller could rarely lift less than ten (10) pounds. Dr. Kuttsamy failed to check any box that would indicate his opinion on whether Heller could lift 10, 20, and/or 50 pounds. (AR 1307.) Dr. Kittusamy recorded that Heller is "very reactive of stress" and that she was incapable of working even in a low stress environment. (AR 1308.)

As mentioned above, on November 18, 2015, the ALJ issued his unfavorable determination. The additional medical evidence of Heller's cardiac condition that was submitted to the Appeals Council and cited by Heller is as follows: A November 25, 2015, ECG by Dr. Samuel Green, M.D., was recorded as "abnormal" and notes it is of "poor data quality, interpretation may be affected." (AR 1442-43.) A January 2016 "abnormal ECG" notes a normal sinus rhythm and states "cannot rule out anterior infarct, age undetermined." (AR 1462.) A September 2016 "abnormal ECG" also notes a normal sinus rhythm and a "possible anterior infarct, age undetermined." (AR 1461.)

**STANDARD OF REVIEW**

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520; 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing (1) she is not working; (2) she has a severe physical or mental impairment; (3) her impairment meets or equals the requirements of a listed impairment; and (4) her RFC precludes her from performing her past work, 20 C.F.R. Pt. 404.1520(a)(4),

416.920(a)(4). At step five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). The step five determination is made on the basis of four factors: the claimants RFC, age, education and work experience. *Id.* "The Commissioner can meet this burden through the testimony of a vocation expert or by reference to the Medical Vocational Guidelines." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. Pt. 404.1520(a)(4), 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" means "more than a mere scintilla but less than a preponderance" of relevant evidence which a reasonable mind might accept as adequate to support the ALJ's decision. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 01035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.3d 1033, 1019 (9th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). "[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that [the] claimant is not disabled." *Jamerson v. Chatter*, 112 F.3d 1064, 10678 (9th Cir. 1997).

…

## DISCUSSION

### Step Two and Consideration of Limitations in the RFC Determination

As mentioned above, Heller claims the ALJ erred in failing to determine that her cardiac abnormalities were severe. (Doc. 14 at p. 11.) She contends that had the ALJ determined that her cardiac abnormalities were severe, he would have "found greater limitations in the RFC." *Id*. Heller argues the same with respect to her laryngospasms. *Id*. at p. 14. The Commissioner argues that substantial evidence supports the ALJ's determination that Heller's cardiac impairments are not severe citing to the medical records that the ALJ mentioned in his decision. (Doc. 19 at p. 5.) The Commissioner argues the same with respect to Heller's laryngospasms. *Id*. at p. 6. Relying upon *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017), the Commissioner also argues that any error at step two was harmless contending that the ALJ "fully addressed the alleged limitations arising from [Heller's] cardiac condition and [her] vocal fold contractions when he considered Dr. Kittusamy and Dr. Gerson's opinions as part of the RFC determination." *Id*. at p. 7.

Heller argues in her reply brief that the ALJ failed to account for symptoms related to her heart condition (such as shortness of breath, dizziness, syncope, and chest pain) and symptoms related to her laryngospasms (such as difficulty with speaking) in formulating the RFC. (Doc. 20 at p. 3.) She argues that this case is unlike *Buck* and more like *Mercado v. Berryhill*, 2017 WL 4029222, at *6 (N.D Cal. 2017), a case in which the district court determined the ALJ's error at step two was not harmless where the ALJ failed to consider the limiting effects of the claimant's mental impairments in formulating the RFC. *Id*.

At step two of the sequential evaluation process, the ALJ must determine whether an impairment is "severe." 20 C.F.R. Pt. 404.1520, 416.920. An impairment is not severe if it does not significantly limit a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. Pt. 404.1520(a)(4)(iii); Soc. Sec. Rul. 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20

C.F.R. Pt. 404.1521(b); Soc. Sec. Rul. 85-28, 1985 WL 56856, at *3. An impairment is not severe if the evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Soc. Sec. Rul. 85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

"Step [t]wo is merely a threshold determination meant to screen out weak claims." *Buck*, 869 F.3d at 1048 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1984)). "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Id*. at 1048-49. In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id*. at 1049 (quoting Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5 (1996)). "The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id*. (Emphasis in *Buck*.) In *Buck*, the Ninth Circuit rejected the claim that the ALJ erred where after a second hearing the ALJ found new severe impairments but did not change the claimant's RFC. The appeals court determined that all of the claimant's impairments were taken into account and there was no error. *Id*. The court also held that since step two was decided in Buck's favor "[h]e could not possibly have been prejudiced." *Id*.

Heller's argument that the ALJ should have determined her cardiac condition to be severe and if the ALJ had he would have "found greater limitations in the RFC" fails. Under *Buck*, the ALJ's RFC formulation should be exactly the same regardless of whether an impairment is severe or not. Also, as in *Buck*, the ALJ here resolved step two in Heller's favor. As a result, this Court finds no error at step two.

There mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). The ALJ must consider evidence of functional limitations in formulating the RFC. *Burch v. Barnhart*, 400 F.3d 676, 683*84 (9th Cir. 2005). Heller argues in her reply brief that the ALJ failed to consider her symptoms related to her cardiac and laryngospasm conditions in formulating the RFC. However, the record reflects that the ALJ considered the functional

limitations of Heller's cardiac and laryngospasm conditions in formulating the RFC.

For instance, the ALJ states that formulating his RFC determination he has "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (AR 36.) The ALJ specifically noted Heller's cardiac condition as it is reflected in Dr. Gerson's consultative internal medicine evaluation. (AR 38.) The ALJ noted that Dr. Gerson, after examination, opined that Heller could lift up to 40 pounds occasionally and 15 pounds frequently, that she could stand/or walk up to 6 hours and sit 6 hours or more in an 8 hour work day; she was limited to occasional ramp/stair climbing, stooping/bending, kneeling and crouching/squatting; she was limited to frequent balancing; she could perform occasional above the shoulder reaching bilaterally. (AR 38.) The record establishes that the last experience of syncope (fainting) was more than 10 years ago. (AR 657.)

The ALJ also considered the limitations posed by Heller's laryngospasm condition and rejected Dr. Gerson's opinion that Heller is required to be at rest during an acute attack of laryngospasm. The ALJ reasoned, "[a]pparently, Dr. Gerson based his speaking limitation entirely on the claimant's subjective history of the condition as [Dr. Gerson] noted no objective observations with regard to the claimant's speaking ability in his report." (AR 38.) Indeed, the record establishes that Heller sought treatment for her vocal fold contractions only one time during the period of disability. (AR 1319.) Heller has not cited to any medical record that would change this determination.

*Mercado v. Berryhill* relied upon by Heller is distinguishable. There, the district court determined that the ALJ had failed to consider the limiting effects of the claimant's mental impairments in formulating the RFC. 2017 WL 4029222, at *6 ("The ALJ did not credit those impairments determining Plaintiff's RFC, which the ALJ found was a full range of light work. *See* AR 18-20.") Here, as discussed above, the ALJ considered the limiting effects of Heller's cardiac and laryngospasm conditions in formulating the RFC.

In sum, the Court concludes that the ALJ did not err at step two and that substantial evidence supports the ALJ's RFC determination.

**Dr. Kittusamy's Medical Opinion**

As mentioned above, Heller also claims the ALJ erred in assigning "inappropriate weight" to Dr. Kittusamy's opinion. (Doc. 14 at pp. 11-14.) The ALJ gave Dr. Kittusamy's opinion no weight reasoning:

> The undersigned also considered contrary medical source opinion from Dr. Prem Kittusamy, who essentially concluded that the claimant was disabled and unable to complete a full 8 hour workday (60F;60F). This opinion is contrary to the overall medical evidence, which largely fails to document significant and persistent cardiac abnormalities in clinical examinations and laboratory testing during the period at issue. Dr. Kittusamy also fails to support his specific functional restrictions with detailed medical findings. Rather, greater weight is given to the opinions of the State Agency physicians and Dr. Gerson, whose assessments are more consistent with the overall medical record during the period at issue.
>
> […] For all of these reasons, I give no weight to Dr. Kittusamy's opinion. In this case, there is no accompanying analysis of objective justification for an opinion, which is inconsistent with the rest of the record.

(AR 39.) The Commissioner argues that the ALJ's reasons for assigning Dr. Kittusamy's opinion no weight – because it is contrary to the overall medical evidence and that there is no accompanying analysis of objective justification for the opinion - are legally sufficient. (Doc. 19 at pp. 9-13.) The Commissioner points to records that establish that Heller's 1998 cardiac ablation was successful and cardiac testing revealed no continued significant abnormalities with the exception of a slight murmur, non-diagnostic abnormal EKGs, and trace regurgitation. (AR 32-33, 39, 799, 802-3, 917, 985-86, 1056.) In May 2014, Dr. Li recorded "treadmill stress and echocardiogram…were unremarkable." (AR 985.) Dr. Li further noted that since Heller's successful ablation in 1998, Heller has had a "host of cardiac testing reported as normal." *Id*. In March 2015, Dr. Yosef Kahn, M.D., recorded that there has been no recurrence of her tachycardia. (AR 917.) In this same medical record, Dr. Kahn records that a treadmill stress test performed in February 2015 yielded a "[n]ormal study: mildly reduced exercise tolerance with no EKG evidence of ischemic heart disease." *Id*.

Generally speaking, the opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Where the record contains conflicting medical opinions concerning the severity of a claimant's limitations the ALJ is responsible for resolving those conflicts. *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005). If an opinion of a treating doctor is contradicted, an ALJ may reject the treating physician's opinion by providing specific and legitimate reasons that are supported by substantial evidence. *Id*. "However, the ALJ need not accept the opinion of any physician, including treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.2d 1219, 1228 (9th Cir. 2009). Here, Dr. Kittusamy's opinion is brief, conclusory and contradicted by the opinions of the state agency medical consultants (AR 134-177) as well as portions of the opinion of Dr. Steven Gerson, D.O. (AR 656-665.) As explained below, the Court determines that the ALJ's reasons for assigning no weight to Dr. Kittusamy's opinion are specific and legitimate reasons that are supported by substantial evidence.

The ALJ noted that Dr. Kittusamy's opinion conflicted with the opinions of the state agency reviewing physicians. (AR 39.) State agency physician Dr. William Dougan, M.D., determined that Heller could perform a range of work that generally supported the ALJ's RFC determination and that was inconsistent with Dr. Kittusamy's opinion. For instance, at the reconsideration level Dr. Dougan noted that in a May 2014 medical record Heller denied shortness of breath, dyspnea on exertion and palpations and that her physical exam was grossly normal. (AR 153.) Dr. Dougan opined that Heller could occasionally climb ramps, stairs, ladders, ropes, scaffolds, frequently balance and occasionally stoop, occasionally kneel, crouch, crawl. (AR 152.)

The ALJ noted that the medical evidence established that Heller's pre-onset cardiac ablation was successful and a host of cardiac testing revealed no continued significant abnormalities. (AR 32-33, 39, 799, 802-03, 917, 985-86, 1056.) A March 2015 medical record reflects that there was no recurrence of her tachycardia (SVT). (AR

917.) The record contains evidence that Heller last experienced syncope more than 10 years ago. (AR 656-57.) A number of medical providers opined that Heller's reported chest pain, palpitations and dizziness were of unclear etiology or non-cardiac in nature. (AR 799 (etiology not clear); AR 986 (her symptoms are not consistent with cardiac etiology); AR 1057 (chest pain, apparently non cardiac).)

As mentioned above, the other reason given by the ALJ for not assigning any weight to Dr. Kittusamy's opinion was that his opinion was not supported by detailed medical findings. (AR 39.) An "ALJ may 'permissibly reject[] … check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Dr. Kittusamy's medical source statement is a check-the-box type of statement that is not completely filled out. (AR 1306-1309.) Dr. Kittusamy failed to indicate on his cardiac medical source statement any clinical finding, laboratory or test result that showed Heller's impairments. (AR 1306.) He failed to identify the frequency and length of contact that he had with Heller. *Id*. Dr. Kittusmay failed to identify his opinion of Heller's prognosis and when asked to describe the nature, location and radiation of symptoms, Dr. Kittusmay wrote "palpitations." *Id.* When asked to describe the treatment and response Dr. Kittusmay listed Heller's subjective symptoms. (AR 1308.) As pointed out by the Commissioner, Dr. Kittusamy answered "yes" to the question of whether Heller's impairments were demonstrated by signs, clinical findings, and laboratory test results. However, in a medical record dated two months before issuing his cardiac medical source statement Dr. Kittusamy recorded Heller as having a normal stress test with mildly reduce exercise tolerance and no evidence of ischemic heart disease. (AR 908.) This same medical record notes that Heller's ECG showed normal systolic function with only trace tricuspid, pulmonary and pericardial regurgitation. *Id*.

Heller argues that "substantial clinical, laboratory and objective evidence supports Dr. Kittusamy's opinion." (Doc. 14 at p. 13.) She relies on a June 2015 medical record (AR 908), Dr. Kittusamy's cardiac medical source statement from August 2015 (AR

1310), and the abnormal EKG/ECG results that were generated after the ALJ's decision. (Doc. 14 at pp. 10, 13.) It is true, as argued by Heller, that medical records generated after the ALJ's decision reflect "abnormal" EKG and/or ECG results. However, the November 25, 2015 ECG medical record notes that it is of poor data quality and data interpretation may be affected. (AR 1442-43.) The September 2016 ECG notes a normal sinus rhythm and a "possible anterior infarct, age undetermined." None of the medical records provide an explanation for the "abnormal" result and also absent from this after-acquired evidence is any analysis of the EKG/ECG data. On the other hand, medical records from the time period in issue recommend that Heller pursue non-cardiac reasons for her complaints. The after-acquired medical records do not undermine the ALJ's reasons for discounting Dr. Kittusamy's opinion.

The Court determines that the ALJ's reasons for discounting the opinion of Dr. Kittusamy are specific and legitimate reasons supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, the decision of the Administrative Law Judge will be affirmed.

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge in the above entitled cause is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and close this case.

Dated this 13th day of September, 2018.

Honorable D. Thomas Ferraro
United States Magistrate Judge

- 14 -